**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**July 28, 2022**

_____

**Christopher M. Wolpert**
**Clerk of Court**

ANITA MARTIN,

    Plaintiff - Appellant,

v.

PUBLIC SERVICE COMPANY OF
COLORADO, a wholly-owned subsidiary
of Xcel Energy, Inc., d/b/a Excel Energy,

    Defendant - Appellee.

No. 21-1354
(D.C. No. 1:20-CV-00076-RBJ)
(D. Colo.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **MATHESON**, **KELLY**, and **CARSON**, Circuit Judges.
_____

In this employment-discrimination case, Anita Martin appeals from a judgment

entered on the jury's verdict in favor of her former employer, Public Service Company of

Colorado (PSC).  Ms. Martin contends the district court erred by placing statute-of-

limitations language in a jury instruction and the verdict form.  Exercising jurisdiction

under 28 U.S.C. § 1291, we affirm.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

### BACKGROUND

Ms. Martin is Hispanic and Native American.  She started working for PSC, a public utility company, in 1983 as a laborer.  In 1987, she was promoted to a full-time pipe fitter position in PSC's Street Department.  In 2005, she transferred to PSC's Pressure Control workgroup.

She eventually became eligible for promotion to the position of lead pipe fitter, which involved "responding quickly to emergency situations occurring due to severe weather and other events compromising the public utility services provided by [PSC]." Aplt. App. at 31.

The Pressure Control workgroup had three full-time lead pipe fitters until October 2012, when lead pipe fitter Nick Lawlor retired.  Ms. Martin claims that when he retired, she was "next in line for promotion to full time Lead." *Id.* at 86.

In 2015, 2016, and 2017, Pressure Control operated with just two full-time lead pipe fitters, Randy Ohelert and Bob Ramsey, both white males.  Nevertheless, PSC assigned Ms. Martin to perform lead pipe fitter duties during those years, but on a less than full-time basis.  Under the collective bargaining agreement applicable to Ms. Martin's employment, temporary performance of higher classification duties resulted in a pay upgrade.

Ms. Martin inquired as early as 2014 about being promoted to a full-time position, alongside Mr. Ohelert and Mr. Ramsey, but PSC "failed to take any steps to ensure [a] full-time lead pipe fitter vacancy was posted." *Id.* at 34.  Because she was not promoted, Ms. Martin decided to retire, effective May 31, 2017.  Mr. Ohelert and Mr. Ramsey also

retired on that date.  Afterward, PSC promoted two individuals to the position of full-time lead pipe fitter.

On February 12, 2018, Ms. Martin filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC).  She alleged that "[o]n or about March 17, 2017, [she] was denied a promotion to the position of lead pipe fitter."  Aplee. Suppl. App., Vol. I at 25.  But she also indicated generally that discrimination occurred as late as May 30, 2017.  On September 27, 2019, the EEOC issued Ms. Martin a right-to-sue letter.

On December 23, 2019, Ms. Martin sued PSC in Colorado state court.  PSC removed the case to federal court, where Ms. Martin filed an amended complaint, alleging she was denied a promotion because of (1) her race, in violation of Title VII and 42 U.S.C. § 1981; and (2) her sex, in violation of Title VII.  She sought back pay, front pay, damages, and attorney fees.

PSC moved for summary judgment, arguing, among other things, that Ms. Martin's claims were time barred.  Specifically, PSC argued that Ms. Martin's Title VII claims were untimely because she alleged PSC refused to promote her on March 17, 2017, but she did not file her EEOC charge within 300 days of that event.  *See* 42 U.S.C. § 2000e-5(e)(1) (providing that, in states like Colorado where there is a state agency to review employment claims, an EEOC charge must be filed with that agency within 300 days of the alleged discriminatory act); *see also* Colo. Rev. Stat. § 24-34-306 (establishing a process through the Colorado Civil Rights Commission for resolving discriminatory or unfair practices).  As to her § 1981 claim, PSC argued that it was

untimely because it was filed more than four years after the date she believed a vacancy

arose due to Mr. Lawlor's 2012 retirement.  *See Cross v. The Home Depot*, 390 F.3d

1283, 1289 (10th Cir. 2004) (observing that a § 1981 failure-to-promote claim in

Colorado has a four-year limitations period unless a "new and distinct relation between

[the employee] and [the employer] would have resulted from [the employee's]

promotion," in which case the period is two years (internal quotation marks omitted)).

The district court denied PSC's summary judgment motion.  The court stated that

(1) Ms. Martin's EEOC charge referenced a discrimination date as late as May 30,

2017—within the 300-day filing period, and (2) Ms. Martin's § 1981 claim was filed

within four years of her employment.[1]

The case proceeded to trial, where the district court instructed the jury on the

applicable law, including PSC's timeliness defenses.  Instruction Number 10 told the jury

that Ms. Martin could not recover under Title VII "for any alleged discrimination that

occurred prior to April 18, 2017," which was 300 days before she filed her EEOC charge.

Aplt. App. at 232.  The instruction further told the jury that Ms. Martin could not recover

under § 1981 "for any alleged discrimination that occurred prior to December 23, 2015,"

which was four years before she filed suit.  *Id.*

---

[1] The district court also found there were genuine issues of material fact for
trial as to "whether race, ethnicity or gender played any role in [PSC's] filling of any
vacancies . . . for the lead pipe fitter position before plaintiff's retirement."  Aplt.
App. at 168 (internal quotation marks omitted).

4

The district court's verdict form combined PSC's timeliness defenses with Ms. Martin's substantive burdens. The verdict form is reproduced in relevant part below, with the jury's findings indicated:

### I.  TITLE VII: DISCRIMINATION BASED ON SEX AND/OR RACE

1.    Has Plaintiff proven by a preponderance of the evidence that Defendant denied her a promotion within the statute of limitations period and that Plaintiff's sex was a motivating factor in Defendant's decision?

Yes ____        No __x__

2.    Has Plaintiff proven by a preponderance of the evidence that Defendant denied her a promotion within the statute of limitations period and that Plaintiff's race was a motivating factor in Defendant's decision?

Yes ____        No __x__

. . .

### III.  SECTION 1981:  DISCRIMINATION BASED ON RACE

8.    Has Plaintiff proven by a preponderance of the evidence that Defendant denied her a promotion within the statute of limitations period and that Plaintiff's race was a but-for cause in Defendant's decision?

Yes ____        No __x__

*Id.* at 239-41.

Because the jury rejected all of Ms. Martin's claims, the district court entered judgment in favor of PSC. Ms. Martin appeals, challenging the statute-of-limitations language in Instruction No. 10 and the verdict form.

## DISCUSSION
### I. Standards of Review

"We review de novo whether, as a whole, the district court's jury instructions correctly stated the governing law and provided the jury with an ample understanding of the issues and applicable standards." *Liberty Mut. Fire Ins. Co. v. Woolman*, 913 F.3d 977, 992 (10th Cir. 2019) (internal quotation marks omitted). "But we review a decision whether to give a particular instruction only for abuse of discretion." *Id.* Similarly, "[w]e review decisions as to the wording of special verdict forms under an abuse of discretion standard." *ClearOne Commc'ns Inc. v. Bowers*, 643 F.3d 735, 765 (10th Cir. 2011) (ellipsis and internal quotation marks omitted).

### II. Statute-of-Limitations Language

Ms. Martin argues that "[b]ecause the district court ruled on the statute of limitations issue in its summary judgment decision, it should not have presented this as a question of fact for the jury to answer." Aplt. Opening Br. at 24. She reasons that the district court's decision "became the law of the case" on the limitations issue and governed the trial. *Id.* We reject this argument for several reasons.[2]

---

[2] Fundamentally, "[a] party may assign as error . . . an error in an instruction actually given, *if that party properly objected*." Fed. R. Civ. P. 51(d)(1)(A) (emphasis added). But Ms. Martin has failed in her opening brief to "cite the precise reference[ ] in the record where" she objected to either Instruction 10 or the verdict form. 10th Cir. R. 28.1(B)(2). Further, "[c]ounsel must designate a record on appeal or prepare an appendix that is sufficient for considering and deciding the appellate issues." 10th Cir. R. 10.4(A). Ms. Martin's appellate appendix contains no transcript of the jury-instruction conference(s) or the district judge's charge to the jury. "These infractions provide sufficient grounds to deny [Ms. Martin's] jury instruction issue on appeal." *Allan v. Springville City*, 388 F.3d 1331, 1334 (10th Cir. 2004). Nevertheless, even "[w]here a particular objection to a jury instruction was not raised

First, when a court denies a summary judgment motion, it simply means that the movant—here, PSC—has not "show[n] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, PSC's failure to meet that standard meant only that "a genuine issue [remained] for trial," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis and internal quotation marks omitted). Thus, contrary to Ms. Martin's belief, the district court's denial of PSC's summary judgment motion did not mean that "[she] timely filed her Title VII and Section 1981 claims," Aplt. Opening Br. at 26. Indeed, Ms. Martin did not file a counter motion for summary judgment to establish any aspect of her claims, including their timeliness.[3]

Second, Instruction 10 and the verdict form did not ask the jury to decide any timeliness issues. Rather, the instruction provided the dates applicable to Ms. Martin's claims and the verdict form asked only whether she had shown that PSC unlawfully

---

below, we [can] review . . . for plain error." *United States v. Jereb*, 882 F.3d 1325, 1335 (10th Cir. 2018). "But we typically only consider the argument if the appellant argues for plain-error review in h[er] opening brief," *United States v. Portillo-Uranga*, 28 F.4th 168, 177 (10th Cir. 2022), and Ms. Martin has not done so. Despite Ms. Martin's waiver of her challenges to Instruction 10 and the verdict form, we will exercise our discretion to consider her challenges. *See id.*

[3] To the extent Ms. Martin claims that "Title VII and Section 1981 statutes of limitations questions . . . must be answered by the presiding judge prior to trial" because they are too complex or complicated for a jury, Aplt. Opening Br. at 25, she cites no supporting authority, and we are aware of none. *See, e.g.*, *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1108 (9th Cir. 1998) ("conclud[ing] that [employee] presented sufficient evidence to raise a genuine factual issue [for trial] regarding whether [supervisor's] discriminatory conduct continued into the relevant period of limitations").

discriminated against her during those time periods.  Thus, this is not a case in which the jury could have provided "irreconcilably inconsistent" answers, "thereby indicating that [it] was confused or abused its power." *Johnson v. Ablt Trucking Co.*, 412 F.3d 1138, 1144 (10th Cir. 2005) (internal quotation marks omitted).

Finally, although Ms. Martin contends the district court incorrectly stated in Instruction 10 "the applicable time period relating to [her] Title VII claim," Aplt. Opening Br. at 26, she offers no analysis or any record or case citations.  She states only that she filed "her EEOC complaint in November 2017" and the EEOC spent "months . . . drafting the 'charge,'" *id.*, which she signed and submitted on February 12, 2018.  We consider this issue waived due to a total absence of analysis.[4]  *See Palma-Salazar v.*

---

[4] Ms. Martin appears to be asserting that her EEOC intake questionnaire, submitted on November 8, 2017, is her "EEOC complaint" that qualifies as her charge of discrimination, rather than her actual charge of discrimination, submitted on February 12, 2018.  We note that in *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008), the Supreme Court stated that an intake questionnaire could qualify as a charge of discrimination (under the Age Discrimination in Employment Act) where the plaintiff had filed no expressly designated charge and the questionnaire included "the information required by the [EEOC] regulations . . . [and] a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Id.* at 402.  The Fifth Circuit has explained that in order for an intake questionnaire to qualify as an employee's Title VII charge, it "must be in writing and signed and verified," and "include the name and contact information of the person making the charge, the same information of the accused individuals, a factual statement of the allegations, the size of the employer, and disclosure of whether the allegations have already been brought to a state or local agency." *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337-38 (5th Cir. 2021) (ellipsis and internal quotation marks omitted) (involving both an intake questionnaire and a formal charge of discrimination).  We will not engage in the fact-intensive inquiry necessary to determine whether Ms. Martin's intake questionnaire qualified as a charge of discrimination, when Ms. Martin has failed to do so.

*Davis*, 677 F.3d 1031, 1037 (10th Cir. 2012) (noting this court does not consider perfunctory arguments unsupported by legal authority); *Bronson v. Swensen*, 500 F.3d 1099, 1104-05 (10th Cir. 2007) (explaining that "we routinely . . . decline[ ] to consider arguments . . . inadequately presented[ ] in an appellant's opening brief," and declining to review appellant's "cursory statements, without supporting analysis and case law"); *see also* Fed. R. App. P. 28(a)(8)(A) (requiring authorities supporting each argument).[5]

## CONCLUSION

Because Ms. Martin has not shown that the district court abused its discretion or otherwise erred in crafting the instructions and verdict form given to the jury, we affirm the district court's judgment.

Entered for the Court

Joel M. Carson III
Circuit Judge

---

[5] We likewise conclude that Ms. Martin has waived her perfunctory and unsupported argument that "the verdict form shift[ed] the burden of proof on [PSC's] affirmative defense of statute of limitations to [her]." Aplt. Opening Br. at 27.